# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**RICKY M. COOPER**

        **Petitioner,**                **JUDGE SMITH**
                                            **MAGISTRATE JUDGE KEMP**
                                            **CASE NO. 2:03-cv-0479**
                                            **CRIM. NO. 2:99-cr-0061**

      **v.**

**UNITED STATES OF AMERICA,**

        **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

      Petitioner, Ricky Cooper, brings this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's response, and the exhibits of the parties.  This case involves petitioner's convictions after a jury trial on conspiracy with the intent to distribute more than 500 grams of cocaine, and possession with the intent to distribute over five grams of crack cocaine. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for discovery, Doc. No. 116, is **DENIED**.  Petitioner's request for additional time to respond  to the return of writ after discovery is provided, Doc. No. 122, therefore likewise is **DENIED**.  Petitioner's motions to unseal docket entries 15, 16, and 17, and to unseal jury questionnaires that were made a part of the record during jury selection in his criminal trial, Doc. Nos. 117, 118, also are **DENIED**.

## I.  FACTS

The United States Court of Appeals for the Sixth Circuit summarized the facts of this case as follows:

> On October 26, 1998, Special Agent Tom Gill received a telephone call from Bureau of Alcohol, Tobacco and Firearms ("ATF") agent Pete Shanahi in New York City informing Agent Gill that Hector Caro had been arrested. [FN1] Mr. Caro agreed to cooperate with authorities, telling them about cocaine and cocaine proceeds in Columbus, Ohio. [FN2]
>
> FN1. Mr. Caro was wanted for firearms violations and the two agents had been working together to find Mr. Caro.
>
> FN2. Prior to the arrest of Mr. Caro, authorities were not investigating Ricky Cooper.
>
> After speaking with Agent Shanahi, Agent Gill spoke with Hector Caro later in the day on October 26, 1998. In that conversation, Mr. Caro informed Agent Gill that he had delivered two and one-half kilograms of cocaine to Appellant in Columbus, Ohio eleven days before. Mr. Caro stated that he had been at a house that he believed was rented by Appellant in Columbus, Ohio on Saturday, October 24, 1998. Mr. Caro described the dwelling as a brown brick house which was four or five houses from the intersection of Perry and Third Ave. across from a park. Mr. Caro stated that an old white van would be parked in the rear of the address. On Saturday, October 24, 1998, Mr. Caro saw two and one-half kilograms of cocaine he had delivered earlier to Appellant in the attic of this dwelling.
>
> Mr. Caro told Agent Gill that he had been in contact with Appellant since Saturday October 24, 1998, in order to arrange for the delivery of $35,000 due to Mr. Caro for the cocaine. Mr. Caro stated that he had spoken to Appellant on the morning of October 26, 1998, before Mr. Caro was arrested, and Appellant had informed him that he still had cocaine and that the money he owed Mr. Caro was ready for delivery. Mr. Caro informed Agent Gill that the money would be in a hidden compartment inside a tan Explorer, which should be parked at the rear of the brown brick residence on Third Ave. Mr. Caro stated that the Explorer had an Ohio registration and was registered to Terry Clark. Mr. Caro's brother-in-law was supposed to transport the money to Caro later that night (October 26, 1998).
>
> Based upon Mr. Caro's description of the house on Third Avenue, Agent Gill and members of the FBI Task force located the house and

2

observed a tan Explorer arrive at the house and park in the rear. The vehicle had an Ohio license plate and was registered to Terry Clark.

Based upon this information from Hector Caro, as well as information from Hector's brother Francisco Caro, [FN3] who was in custody on October 26, 1998, two search warrants were issued at 8:23 p.m. on October 26, 1998 for (1) the dwelling at 539 West Third Avenue, [FN4] Columbus, Ohio (Appellant's residence) and (2) a 1991 Ford Explorer.

FN3. Francisco Caro was in custody pending sentencing on cocaine trafficking charges. Prior to Hector Caro's arrest on October 26, 1998, Francisco Caro stated that he believed that his brother Hector continued to supply cocaine to customers in Columbus since Francisco was arrested in 1996. Francisco believed that one of his brother's customers was named Ricky.

FN4. At the time the search warrant was issued the address was not known because the agents could not see an address in the dusk. Agent Gill identified a photograph of the house supplied by Appellant which showed a house number of 539 on the outside of the dwelling.

The search warrants were executed on the night of October 26, 1998. The Ford Explorer was stopped and searched first. [FN5] The investigating agents found $35,115 in a concealed compartment behind the rear seat in the cargo area of the Ford Explorer.

FN5. Agents observed two individuals leave the residence at approximately 7:48 p.m., enter the Ford Explorer, and drive away. They were followed and the car was stopped about a mile from 539 Third Ave. in order that the search warrant could be executed. At the time it was stopped, the Explorer was being driven by Charles Glenn and Hector Caro's brother-in-law, Jose Soriano Alfredo Constanzo, was a passenger.

The driver, Charles Glenn, was not arrested but accompanied the agents to 539 West Third Avenue where entry was made using the keys obtained from Mr. Glenn after he was stopped driving the Ford Explorer. In the residence agents found approximately two kilograms (1,981 grams) of cocaine, 23.3 grams of crack cocaine and a digital set of scales and an empty kilo wrapper with cocaine residue in it.

A complaint and arrest warrant were issued the following day. Appellant was indicted April 13, 1999. On June 7, 1999, the Government advised the trial court and Appellant's counsel, Joseph

Reed, of statements made by a co-conspirator, Charles Glenn. Mr. Glenn claimed to have delivered drugs to Mr. Reed on two occasions (1994 and late 1998) at the Appellant's request. The trial court held a hearing on the matter a week later. The trial court appointed Steven Brown, in addition to Mr. Reed, to assist Appellant with evaluating the conflict of interest issue. Though Appellant agreed to sign a waiver, the trial court found compelling circumstances required disqualification of Mr. Reed as counsel. Mr. Reed was permitted to sit at counsel table and help in the preparation of Appellant's defense as a "case agent".

The Appellant filed a motion to suppress the evidence obtained during the searches. Following a hearing on the matter, the trial court denied the motion, finding Special Agent Gill conducted a sufficient investigation of the information provided by the unindicted co-conspirator Hector Caro. The trial court also determined Agent Gill's corroboration of the information established Mr. Caro's credibility and reliability. The government subsequently sought to supplement the record stating that Agent Gill had been mistaken when he testified about information obtained from Francisco Caro (Hector's brother). Agent Gill testified that information obtained from Francisco was derived from a memorandum of an interview by other agents. A search of FBI files revealed that the information was obtained from an interview by Agent Gill himself on October 22, 1998. The trial court determined that it was proper for the government to supplement the record and provided the Appellant with the opportunity to re-call Agent Gill to cross examine him on this information. Defense counsel declined to examine Agent Gill on this matter.

*United States v. Cooper*, 39 Fed.Appx. 185, unpublished, 2002 WL 1033724 (6th Cir. May 21, 2002), Doc. #61.

## II. PROCEDURAL HISTORY

On April 13, 1999, the federal grand jury for the Southern District of Ohio, Eastern Division returned a three count indictment charging petitioner with conspiracy to possess with the intent to distribute more than 500 grams of cocaine, possession with the intent to distribute over five grams of crack cocaine, and possession with the intent to distribute over 500 grams of cocaine, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(b)(ii), (b)(1)(B)(iii), 21 U.S.C. §846, and 18 U.S.C. §2.  In addition,

4

petitioner was charged with two forfeiture counts pursuant to 21 U.S.C. §853(a). Doc. #9. On June 14, 1999, after a hearing, petitioner was appointed new counsel due to a conflict on the part of his prior attorney, Joseph Reed. On September 8, 1999, after a hearing, petitioner's motion to suppress evidence was denied. Represented by counsel, on September 13, 1999, petitioner proceeded to jury trial. On September 17, 1999, petitioner was found guilty on counts one and two; however, a mistrial was declared on count three, as the jury was unable to reach a verdict. Docs. #41 and 42. Petitioner did not contest the forfeiture counts. Doc. #41. On May 11, 2000, petitioner was sentenced to a cumulative term of 365 months incarceration plus five years supervised release. Doc. #54. Petitioner filed a timely appeal of his conviction and sentence to the United States Court of Appeals for the Sixth Circuit. He raised the following issues on appeal:

> 1. Did the trial court err by ordering the disqualification of [petitioner's] trial attorney?
>
> 2. Did the trial court err by denying [petitioner's] motion to suppress?
>
> 3. Did the trial court err by sentencing [petitioner] in violation of the presentment and Due Process clauses of the Fifth Amendment and the rule of law set forth in *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000)?

*See* Doc. #61. On May 21, 2002, the Sixth Circuit affirmed the judgment of this Court. *United States v. Cooper*, *supra*; Doc. #61. On October 28, 2002, the United States Supreme Court denied petitioner's petition for a writ of *certiorari.* On September 19, 2002, petitioner filed a motion for a new trial. On October 13, 2004, his motion was denied. Doc. No. 94. On February 7, 2006, the United States Court of Appeals for the Sixth Circuit affirmed the Court's denial of petitioner's motion for a new trial. *United States v. Cooper*, 168 Fed.Appx. 689, unpublished, 2006 WL 287425 (6th Cir. February 7, 2006), *see* Doc. No. 101. The United States Supreme Court denied petitioner's

petition for a writ of *certiorari*. Doc. No. 114.

On May 27, 2003, petitioner filed the instant *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. He asserts the following claims:

> 1. Sixth Amendment right to counsel of choice was violated, Fifth Amendment right to due process/prosecutorial misconduct.
>
> Attorney Joe Reed was my initial counsel as appointed by the Court and my choice of counsel. Attorney Reed was disqualified by false accusations from the prosecution which implicated attorney Reed in drug dealings; consequently, attorney Reed was disqualified from representing me. Government witness Charles "Butch" Glenn was the person who implicated attorney Reed, but [a] polygraph test indicated that Mr. Charles had lied about Mr. Reed.
>
> 2. Sixth Amendment right to the effective assistance of counsel violated.
>
> Attorney Steve Brown, as defense counsel, failed to question government witness Charles Glenn about Glenn's accusations that he had delivered drugs to attorney Reed. Such a line of questioning would have established that Mr. Glenn had lied during an official investigation, and it is likely that Mr. Glenn would have lied on the witness stand.
>
> 3. Sixth Amendment right to the effective assistance of counsel was violated.
>
> Cooper raised a timely objection to the jury as constituted because there were no African Americans in Cooper's jury pool, in violation of the jury selection and Service Plan. The trial court investigated and found out that no African Americans were included in Cooper's jury pool and asked counsel what he would like the Court to do. Counsel simply abandoned the claim.
>
> 4. Ineffective assistance of counsel on direct appeal, in violation of the Sixth Amendment.
>
> Counsel filed timely ob[jections] to drug amounts during trial, in the Pre-Sentence Investigation Report, and at sentencing. But on direct appeal, counsel failed to mention that he had made any contemporaneous objection to drug amount in support of an *Apprendi* claim. This affected the standard of review and prejudiced Cooper's

6

claim.

5. Ineffective assistance of counsel in violation of the Sixth Amendment.

Defense counsel, attorney Steve Brown, never interviewed me about my case prior to defending me at trial. Because of counsel's failure to interview me prior to trial, he failed to learn of my true relationship to government witnesses Hector Caro and Francisco Caro. This was significant in that Francisco Caro committed perjury in his testimony, and counsel could have shown said perjury to jury, to wit: that Francisco Caro was in a conspiracy with me from June of 1996 through October 26, 1998, when in fact Francisco Caro was incarcerated from June 6, 1996, through October 26, 1998, in prison. And counsel could have better served me in regard to other issues at trial had he interviewed me to learn about my case from me personally.

6. Denied fair trial and due process of law in violation of the Fifth and Sixth Amendment.

During jury deliberations, the jury presented a question to the Court. The question was: "Does the cocaine base found at the time of the search have to be the same cocaine in the charges in Count 2? The Foreman." Cooper believes the Court's reply to the jury's question was unduly suggestive and improperly instructed the jury to find Cooper guilty. The Court's repl[y] was: "You, the jury, must find beyond a reasonable doubt that the defendant, Ricky M. Cooper, knowingly and intentionally and unlawfully possessed with intent to distribute cocaine base, commonly referred to as crack, a Schedule II substance."

At this point in the proceedings, defense counsel, Mr. Brown, requested the Court to: "Add 'it is up to you to decide beyond a reasonable doubt'" The Court then added one final instruction in reply to the jury's question: "And you must decide it unanimously."

It is Mr. Cooper's contention that the Court's reply and use of the word "must" was unduly suggestive absent any qualifying phrase.... In short, the Court's reply to the jury's question was a command that the jury must find beyond a reasonable doubt that Ricky M. Cooper knowingly and intentionally and unlawfully possessed with intent to distribute cocaine base....

7. Denied due process of law in violation of the Fifth Amendment.

7

The District Court lacked subject matter jurisdiction to sentence Mr. Cooper beyond the statutory maximum of twenty years, where the indictment charged a conspiracy to distribute 500 grams or more of powder cocaine in count one and only 5 or more grams of cocaine base in count two.

8. Ineffective assistance of counsel, in violation of the Sixth Amendment.

Counsel failed to recognize or raise the claim at the end of the government's case in chief that the government had failed to establish the existence of a conspiracy by means independent of co-conspirator testimony under *Vinson* and *Enright.*

9. Prosecutorial misconduct, in violation of the Fifth Amendment to due process of law.

Petitioner believes the prosecution improperly manipulated the judicial process in order to present at sentencing drug amounts that the prosecutor could have and should have charged in the indictment. This denied petitioner fair notice of the penalties he faced when weighing his decision on whether to plead guilty pursuant to a plea agreement or proceed to trial. This allowed the prosecutor to remove facts from the jury's determination for a finding beyond a reasonable doubt to the reduced standard of a preponderance of the evidence at sentencing. Petitioner's indictment was amended at trial and sentencing from 841(b)(1)(C) to a (b)(1)(A) offense.

Proceedings were stayed at petitioner's request pending resolution of petitioner's motion for a new trial and petitioner's appeal of the denial of his motion for a new trial, until September 26, 2006. It is the position of the respondent that all of petitioner's claims are without merit or not properly considered in this federal habeas corpus proceeding.

### III.  DISCOVERY REQUEST; REQUEST TO UNSEAL DOCUMENTS

Petitioner has filed a request for discovery in support of his §2255 petition.  Specifically, petitioner requests written interrogatories of Steven Nolder and Francisco Caro in connection with his allegation that Special Agent Thomas Gill lied when he said that he met with Caro at the

8

Franklin County Jail on October 22, 1998, in order to obtain a search warrant. Petitioner also requests that jury questionnaires, filed under seal, be provided to him, along with a copy of the jury selection plan, in connection with his claim that he was denied the effective assistance of counsel due to his attorney's failure to object to the absence of African Americans on the jury pool. *Discovery Request*, at 3. Petitioner further requests the results of polygraph tests administered to prosecution witness Charles "Butch" Glenn be provided in connection with petitioner's claim that the District Court improperly disqualified defense counsel Joseph Reed due to a conflict of interest. *Id.* Petitioner requests written interrogatories of attorney Reed and Charles Glenn in connection with this same claim. Finally, petitioner requests that docket entries 15, 16, and 17 (*i.e.*, the brief of the government, and the memorandum of the defendant regarding the alleged conflict of attorney Reed, and the minutes of the hearing on the alleged conflict), which were filed under seal, be unsealed. *Id.*, at 5.

The discovery processes contained in the Federal Rules of Civil Procedure do not apply across the board in habeas corpus actions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings. As a result of the holding in *Harris*, the Rules Governing Section 2254 cases in United States District Courts were promulgated in 1976.

Specifically, Rule 6(a) provides--

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

9

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief....'" *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300). *See also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *rehearing en banc denied* Nov. 29, 2001.

> "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford,* 266 F.3d at 460. Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Rector v. Johnson,* 120 F.3d 551, 562 (5th Cir.1997); *see also Stanford,* 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir.1994).

*Williams v. Bagley,* 380 F.3d 932, 975 (6th Cir. 2004).  Upon review of the record, this Court is not persuaded that petitioner has met this standard here.

Petitioner does not raise in this federal habeas corpus petition any issue regarding the Court's denial of his motion to suppress evidence, or the connected allegation that Agent Gill lied.  He did raise these issues in his motion for a new trial.  As discussed, he also asserted on direct appeal that the District Court improperly denied his motion to suppress evidence; however, as previously mentioned, the United States Court of Appeals has affirmed the Court's denial of petitioner's motion to suppress, and the denial of petitioner's motion for a new trial.  *See United States v. Cooper*, *supra*; Doc. #6; *United States v. Cooper*, *supra*, *see* Doc. No. 101.  The United States Supreme Court has denied petitioner's petitions for a writ of *certiorari*.  Similarly, petitioner's claim that the Court improperly disqualified attorney Reed from representing petitioner due to a conflict of interest has been rejected on direct appeal.  Therefore, none of the foregoing issues are properly considered in

10

these habeas corpus proceedings.  *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999), citing *Oliver v .United States*, 90 F.3d 177, 180 (6th Cir. 1996) and *Davis v. United States,* 417 U.S. 333, 345 (1974); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).  Petitioner's requests for interrogatories, for the results of polygraph tests, and his request that the Court unseal documents 15-17, which all relate to claims already addressed on direct appeal, therefore are **DENIED**.

Petitioner also requests copies of the jury questionnaires and a copy of the jury selection plan, in connection with his claim that he was denied the effective assistance of counsel due to his attorney's failure to object to the absence of African Americans on the jury pool.  *Discovery Request*, at 3.  As noted by the respondent, the jury selection plan has already been provided to defense counsel, and petitioner may obtain a copy of the jury selection plan from his former attorney.  The jury questionnaires, filed under seal, have been reviewed by this Court.  They provide petitioner no basis for relief.  *See discussion, infra*, at 15-18.

Petitioner's request for discovery and related motions, Doc. Nos. 116-122, therefore all are **DENIED.**

## IV.  CLAIM ONE

In claim one, petitioner asserts that he was denied his right to counsel of choice because the Court disqualified attorney Reed from representing petitioner due to a conflict of interest.  The United States Court of Appeals for the Sixth Circuit has already rejected this claim on direct appeal. This Court therefore will not now again address such claim here.  *See Jones v. United States, supra,* at 796; *Oliver v .United States*, *supra,* 90 F.3d at 180; *Davis v. United States, supra*, 417 U.S. at 345; *DuPont v. United States*, *supra,* 76 F.3d at110.

## V.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

11

Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed properly to cross examine prosecution witness Charles Glenn about Glenn's allegation that he had delivered drugs to attorney Reed. Petitioner argues that cross examination of Glenn on this issue would have showed that Glenn was a liar and cast doubt on Glenn's testimony against petitioner.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider

the other. *Strickland,* 466 U.S. at 697. Petitioner has failed to meet this standard here.

The government granted Glenn immunity in return for his testimony against petitioner. *Transcript*, Vol. II, at 386. Glenn admitted to prior convictions for armed bank robbery, bank robbery, conspiracy to counterfeit United States currency, and illegal possession of a firearm. *Id.*, at 387-392. He was on supervised release status at the time he testified and during his participation in the charges at issue here. *Id.*, at 393. Glenn also had been arrested in St. Louis, Missouri on charges of transportation of marijuana; however, those charges were dismissed after he cooperated with authorities. *Id.*, at 394. Prior to being arrested on charges arising out of this case, Glenn lived at Cooper's home on West Third Avenue in Columbus. *Id.*, at 397. Glenn met Cooper in 1996. *Id.*, at 398. When Glenn was released from prison in November 1997, they renewed their acquaintance. *Id.* They discussed opening a mortgage company together, but did not have the money. *Id.*, at 399-400. Cooper had friends from New York who could help them raise money by dealing narcotics. *Id.*, at 400-401. Glenn thought this was a good idea, as he had sold marijuana and cocaine from 1991 to 1993. *Id.*, at 402. Glenn thereafter met Raphael, Edwardo, and an unidentified man who did not speak English, Cooper's contacts from New York. According to Glenn, these men delivered narcotics to Cooper. *Id.*, at 404. Raphael is also known as Hector Caro, who also testified against petitioner pursuant to the terms of his guilty plea. *Id.*, at 463; *see also id.*, at 507-740. Glenn watched Cooper's back and entertained the narcotics dealers from New York when they were in Ohio. *Id.*, at 403, 406. Glenn saw the three men from New York seven times before police searched Cooper's house. *Id.*, at 406. Glenn never observed an actual exchange of drugs. *Id.*, at 408. However, on one occasion, Cooper told Glenn that the New Yorkers delivered five kilos of cocaine. Another time, Cooper said he anticipated a delivery of fifteen kilos of cocaine. *Id.*, at 410-411.

13

Glenn helped Cooper count money obtained from narcotics transactions. Glenn counted $20,000 from one transaction, and $40,000 from another transaction. *Id*., at 12. Glenn and Cooper delivered money to Raphael, Edwardo, and the unidentified man in exchange for cocaine. *Id*. After one such alleged delivery, Glenn saw three packages of rock cocaine at Cooper's home on Third Avenue. Each package weighed one kilogram. *Id*., at 422. Glenn watched Cooper "re-cook" the rock cocaine in the kitchen of the Third Avenue house. *Id*., at 416; 417-419. Joe Cooper, Rick's brother who also lived at the Third Avenue house, walked in while Rick Cooper was re-cooking the cocaine. *Id*., at 419. Joe Cooper also testified at trial. *See id.*, at 194-242. Joe Cooper remembered seeing Rick and Glenn (or "Butch") in the kitchen cooking, but he denied ever seeing drugs in the house. *Id*., at 216-217; 232-233. Glenn delivered nine ounces of rock cocaine that he obtained from Cooper to his nephew, John Williams. *Id.*, at 419-420. Glenn lied to police about his own involvement in selling drugs to Williams. *Id.*, at 420. After the delivery of rock cocaine described above, Cooper told Glenn that he received a shipment of five kilos of powder cocaine. Glenn then saw three kilos of cocaine in the living room of the Third Avenue house. *Id.*, at 421, 425. The drugs were packaged in compressed block form. Cooper broke open one of these to make a delivery. Cooper used a small digital scale to weigh the drugs. *Id*, at 426-427. Cooper took the remaining drugs upstairs. *Id.*, at 429. The narcotics dealers from New York drove a beige Ford Explorer purchased through arrangements made by Cooper. *Id.*, at 430-431. The New Yorkers wanted a vehicle with four wheel drive so that they could build a hidden compartment into the car. *Id.*, at 431, 491. Rick Cooper lived upstairs. *Id.*, at 435. On the Saturday before police executed the search warrant of Cooper's home, Raphael and the unidentified man showed up at the house looking for Cooper. *Id.*, at 445. Glenn tried to contact Cooper but was unable to reach him. *Id*. According to Glenn, the

14

men from New Yorker delivered a total of four loads of drugs to Cooper; however, Glenn only saw two.  *Id*., at 454.  Cooper gave Glenn $100.00 from time to time and a car in payment for his services.  *Id*., at 458.  On cross examination, Glenn again admitted that he initially lied to police. *Id*., at 465-66.  Defense counsel also brought out that Glenn had worked as an undercover police officer for the Oakland Police Department, but was fired for stealing and re-selling narcotics.  *Id*., at 469, 471.  Glenn had 15 to 20 pounds of marijuana in the trunk of his car when police stopped him in Missouri.  *Id.*, at 475.  Glenn had violated the terms of his supervised release by using and selling drugs.  *Id*., at 482.  When Glenn dealt drugs in the past, he dealt with three to four kilogram deliveries of cocaine.  *Id.*, at 484.  The unidentified man from New York was staying at Cooper's home immediately prior to execution of the search warrant.  *Id.*, at 489.  When Cooper learned that the unidentified man was staying the Third Avenue home, he became angry with Glenn.  Cooper was concerned that the New Yorkers were trying to set him up.  *Id.*  Glenn acknowledged that if he went back to jail he would be classified as a career offender.  *Id.,* at 492.

Petitioner has failed to establish the ineffective assistance based upon his attorney's failure to cross-examine Glenn regarding Glenn's allegation that he delivered drugs to attorney Reed. Glenn's motive to testify against petitioner and unsavory character were brought out at trial.  Glenn admitted that he was testifying pursuant to a grant of immunity, that he was a convicted felon, armed robber and drug dealer, and that he was on supervised release at the time he participated in the charges at issue here.  Glenn acknowledged that he avoided substantial jail time and classification as a career offender by testifying against petitioner.  Cross-examination of Glenn regarding his allegation that he had delivered cocaine to attorney Reed would have done little to further undermine Glenn's credibility.  Further, evidence of petitioner's guilt was substantial.

15

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to object to the jury pool as unconstitutionally selected due to the absence of African Americans on the venire.  Under the Sixth Amendment, a criminal defendant is entitled to a jury venire that represents a fair cross section of the community.  *Buford v. United States*, 2006 WL 3375375 (E.D. Tenn. Nov. 21, 2006), citing *Taylor v. Louisiana,* 419 U.S. 522 (1975).

> However, there is no requirement that the jury panel must accurately reflect the proportionate strength of every identifiable group:
>
> ... [I]n holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.
>
> *Id.* at 538.
>
> The Supreme Court has held that, in order to establish a Sixth Amendment violation, a defendant must establish the following:
>
> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
>
> *Duren v. Missouri,* 439 U.S. 357, 364 (1979). Each of these three elements "must be established before the government is required to justify an infringing selection procedure." *United States v. Allen,* 160 F.3d 1096, 1103 (6th Cir.1998).

*Buford v. United States*, 2006 WL 3375375 (E.D. Tenn. Nov. 21, 2006).  Petitioner has not met this standard here.

16

During jury selection defense counsel stated:

> Your Honor, I look around the room and notice that there is not a single black in the entire venire.  I think that by simply making that fact known to the Court we have established a prima facie case of violation of the fair cross-section requirement of the Sixth Amendment on jury selection....

> \*\*\*

> COURT: ... The jury plan, the selection plan has been drawn with that in mind, but... there is a very, very small percentage of blacks in the Southern District of Ohio and an even smaller percentage in the Eastern Division of Ohio.  I believe it is two or three percent.

> MR. BROWN (defense counsel): In this kind of situation, do you make the Jury Selection Plan from the Commissioner an exhibit for the record?

> COURT: We can do that, sure.... [1]

> MS. JONES (prosecutor): I would also note for the record, Your Honor, in the questionnaires there were either four or five individuals that were marked that they were black, but they just didn't show up....

> COURT: Well, we can try to call those people in or call everyone in,

---

[1]  Although the trial transcripts indicate that the Jury Selection Plan was to be made a part of the record in this case, this Court is unable to locate such document in the record.

[Court]:  We have the Jury Selection Plan of 1995, which has been updated in '97, with the Department of Motor Vehicles list.  The '95 plan, which I will make a part of the record, is a step-by-step outline and in getting down to the percentages on Page 3 are the percentages of the district voters.  I don't have an update on that, but that is a consideration of what the percentage would be in the City of Columbus.  Well, I will just make this available for counsel to study.  It would take quite a bit of time to go over that.

*Transcript*, at 54-55.

everyone who did not show.

> MS. JONES: Juror Number 69, she marked that she was on her questionnaire and Juror Number 81, Lori Taylor also. I think the first one is Alisha Hagwood.  Juror Number 93 is Jean Wilke.... There may have been three – not four – but there were three that marked off that as far as their race.

> ***

> There could be more, but since we didn't get single questionnaire sheets for everybody, I don't know.

*Transcript*, Vol. I, at 21-23.  Upon agreement of the parties, the Jury Commissioner called the thirteen jurors who had failed to appear for jury duty.  Three of these persons responded, none of whom were African Americans.  *See id.*; 53-54.  Still, as noted by respondent the record reflects that at least three of the members of the jury pool who failed to appear for jury selection stated on the jury questionnaires that they were "black" -- *i.e.*, juror number 69, Alisha Hazelwood; juror number 81,Lori Taylor; and juror number 93, Jean Wilkes.  *See Voir Dire Exhibit B* (filed under seal).

The record thus fails to support petitioner's allegation that no African Americans were chosen for the venire.  Further, nothing in the record indicates either that the percentage of African Americans selected for the venire was not "fair and reasonable in relation to the number of such persons in the community," or that any under representation of African Americans was the result of their systematic exclusion from the jury-selection process.  *Duren v. Missouri, supra*, 439 U.S. at 364.  Petitioner therefore likewise has failed to establish the ineffective assistance of counsel for failing to pursue this issue.

The record thus fails to support petitioner's allegation that no African Americans were

Petitioner asserts that he was denied the effective assistance of counsel because his attorney

failed to interview him prior to trial and therefore failed to learn about petitioner's "true relationship to government witness Hector Caro. " According to petitioner, Caro could not have participated in any of the charged drug transactions with petitioner, because Caro was incarcerated from June 6, 1996, until October 26, 1998.  Petitioner also states:

> [C]ounsel could have better served me in regard to other issues at trial had he interviewed me to learn about my case from me personally.

*Petition*, at 6.  However, petitioner fails to specify in what manner defense counsel acted deficiently.

Again, petitioner has failed to establish the ineffective assistance of counsel under *Strickland*. The government did not argue that Caro and petitioner conspired to sell drugs together when Caro was incarcerated.  In opening statement, the prosecutor stated:

> [W]hat you will learn is that... two brothers, Hector and Francisco Caro, were bringing kilogram quantities of cocaine from New York City to Columbus, Ohio, for distribution.  Their involvement dates back to 1993.
>
> ***
>
> Ricky Cooper... began getting cocaine directly from Hector Caro in 1996.  And that continued on and off on various occasions from 1996 up until October 26th of 1998.
>
> ***
>
> [O]n October 26th of 1998... Ricky Cooper was not the subject or target of any investigation being conducted by the Federal Bureau of Investigation.  You will learn that they had heard his name prior to that date because Francisco Caro... one of these brothers from the Dominican Republic that was bringing this cocaine to Columbus, he had been arrested clear back in 1996 and he had cooperated and provided a variety of names and had mentioned Ricky Cooper among

19

>
> many others, but the FBI had not begun any specific investigation of Ricky Cooper as of October 26th of 1998.  Then, on that particular date, Ricky Cooper suddenly became a target of the investigation. And the way that happened was that Francisco Caro's brother Hector, who had been out and about since 1996 – he wasn't arrested the same time as his brother Francisco – he was arrested in New York City on October 26th on some outstanding gun charges.
>
> ***
>
> Hector Caro wanted to cooperate and... provided information... that back in Columbus, Ohio, in a house on Third Avenue, ... there was approximately two to two and a half kilograms of cocaine as well as over $35,000 in cash, money that had been derived from the sale of cocaine.

*Transcript*, at 83-83.

> Frank Caro... was arrested [in 1996].... You will learn that Frank Caro has been in jail ever since June of 1996.

*Id.*, at 93.  The government argued that petitioner conspired with Francisco Caro, John Porter, and Hector Caro until 1996, when Francisco was arrested, and that thereafter, petitioner conspired with Hector Caro until Hector was arrested in 1998.  *Id.*, at 95-96.  Further, Francisco Caro, who testified against petitioner pursuant to the terms of his guilty plea, *id.*, at 293-294, acknowledged that he had been incarcerated since June 1996.  *Id.*, at 297, 341-342.  He brought drugs to Columbus from 1993 to 1996.  *Id.*, at 305-307, 309-311.

Finally, petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to move for judgment of acquittal, request a mistrial, or request that statements of co-conspirators be stricken from the record on the basis that the government improperly failed to establish the existence of a conspiracy prior to admission of co-conspirator statements by

20

Francisco Caro, Hector Caro, and Charles Glenn against him. Petitioner argues that admission of co-conspirator statements against him prior to the introduction of sufficient evidence establishing the existence of a conspiracy violated *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978), *United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979), and *Bourjaily v. United States*, 483 U.S. 171, 181-82 (1987). *Petition,* at 4-5. Again, petitioner's argument is not persuasive.

All of the foregoing cases referred to by petitioner involve admission of third-party out-of-court statements by a co-conspirator against a criminal defendant under Federal Rule of Evidence 801(d)(2)(E), which provides that a statement is not hearsay if "[t]he statement is offered against a party and is... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

> The contents of the statement shall be considered but are not alone sufficient to establish.... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

Federal Rule of Evidence 801(d)(2)(E). In *United States v. Vinson, supra*, 606 F.2d at 152, the United States Court of Appeals for the Sixth Circuit stated:

> [B]efore the government can take advantage of the co-conspirator exception to the hearsay rule, it must show by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant against whom the hearsay is offered was a member of the conspiracy, and (3) that the hearsay statement was made in the course and in furtherance of the conspiracy. We also held that this preliminary finding is the sole province of the trial judge. Fed.R.Evid. 104(a).

*Id*., citing *United States v. Enright, supra.* The Sixth Circuit held in *United States v. Vinson, supra,* that a District Court could make such findings by holding a "mini-hearing," by requiring the government first to produce non-hearsay evidence regarding existence of the conspiracy, or by

admitting "the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." *Id.,* at 152-153.

However, petitioner does not refer to, and the Court is unable to locate in the record, admission of any third-party co-conspirator hearsay statements under Evidence Rule 801(d)(2)(E). Glenn, and Francisco and Hector Caro did testify as to statements made by petitioner; however, petitioner's statements to others were admitted as non-hearsay under Federal Rule of Evidence 801(d)(2)(A), which provides that a statement is not hearsay if "[t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity[.]" Petitioner has failed to establish the ineffective assistance of counsel based on his attorney's failure to raise an issue regarding improper admission of hearsay statements by co-conspirators under Federal Rule of Evidence 801(d)(2)(E).

In sum, petitioner's claim of ineffective assistance of trial counsel lacks merit.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to argue on direct appeal that trial counsel objected to drug quantity determinations made by the Court at sentencing in support of petitioner's claim that his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), thus resulting in plain error review of this claim.  Petitioner asserts that, had appellate counsel notified the United States Court of Appeals for the Sixth Circuit that trial counsel objected at sentencing to drug quantity determinations, his *Apprendi* claim would have been reviewed *de novo*, rather than only for plain error, and would have been meritorious. *Petition*, at 6.

The United States Court of Appeals for the Sixth Circuit rejected petitioner's *Apprendi* claim

as follows:

> Since Appellant did not object to the redaction of the quantity of drugs from the jury charge at trial, review of the district court's sentencing decision is for plain error. *United States v. Stafford,* 258 F.3d 465, 470 (6th Cir.2001).

> The Appellant contends that the district court erred by sentencing him in violation of the presentment and Due Process clauses of the Fifth Amendment, the notice and jury trial guarantees of the Sixth Amendment and the rule of law set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt[,]" rather than be submitted to a judge and proved by a preponderance of the evidence. *Id.* at 469, 490, , 120 S.Ct. 2348497, 120 S.Ct. at 2362-2363. This circuit has recently applied *Apprendi* to the federal drug statute set out in 21 U.S.C. § 841. *See, e.g., United States v. Strayhorn,* 250 F.3d 462, 469-70 (6th Cir.2001); *United States v. Ramirez,* 242 F.3d 348, 350 (6th Cir.2001); *United States v. Flowal,* 234 F.3d 932, 936 (6th Cir.2000). In so doing, we have held that the determination of drug quantity, when it subjects a defendant to enhanced sentencing under § 841(b), constitutes an element of the offense that the government must prove to the jury beyond a reasonable doubt. *U.S. v. Garcia,* 268 F.3d 407, 412 (6th Cir.) citing *Strayhorn,* 250 F.3d at 468; *Flowal,* 234 F.3d at 936.

> In this case the district court redacted, over the objection of the government, the quantity of drugs charged in the indictment from the jury charge. Appellant was sentenced to a 365 month prison term on Counts One and Two on May 11, 2000, six weeks before *Apprendi* was decided. Appellant's 365 month sentence exceeds the 20 year maximum sentence for a conviction under 21 U.S.C. § 841(a)(1) and (b)(1)(C) for distribution or possession with intent to distribute cocaine or cocaine base, without regard to quantity. Under *Apprendi,* before the district court could impose a sentence in excess of 20 years, a jury must make factual findings that the amount of cocaine Appellant conspired to distribute and possess with intent to distribute exceeded 500 grams in Count I and that Appellant possessed with

intent to distribute more than 5 grams of cocaine base in Count 2.

### A. Nature of Controlled Substances

In addition to the quantity argument, Appellant argues that *Apprendi* also requires the jury to determine the "nature" of the controlled substance as the nature of the substance (cocaine or cocaine base) triggers different sentences. Appellant suggests that the nature of the controlled substance was not submitted to the jury because the district court gave the following instruction:

In addition, the government is not required to show that the defendant knew the substance involved was cocaine or cocaine base. It is sufficient if the evidence establishes beyond a reasonable doubt that defendant knew that he possessed some type of controlled substance and that he did, in fact, possess with intent to distribute cocaine base or a mixture containing cocaine base as charged in Count 2, or cocaine or a mixture containing cocaine as charged in Count 3.

(Jt.App. Vol.II at 464). Appellant contends that on remand any new sentence imposed must not exceed the maximum penalty set forth in 21 U.S.C. § 841(b)(1)(D) which provides a maximum sentence of 5 years (or 10 years if Appellant had a prior felony drug conviction).

The government argues that the nature of the controlled substances was submitted to the jury because, notwithstanding the instruction noted above, the indictment and the jury instructions and jury verdict made it very clear that Appellant was charged and convicted of cocaine and crack cocaine offenses. Review of the trial transcript and jury charge reveals that the government is correct. The jury was instructed for purposes of the conspiracy charge that the alleged purpose of the conspiracy was the distribution and possession with the intent to distribute cocaine and that an element of the offense of distribution of a controlled substance included that the "defendant knew that the substance was cocaine". (Jt.App. Vol.II at 452-53) Thus, the jury instructions required the jury to find that Appellant conspired to distribute and/or to possess with intent to distribute some quantity of cocaine in order to find Appellant guilty of Count 1 beyond a reasonable doubt. (Jt.App. Vol.II at 453).

Similarly, with respect to Count 2, the jury was instructed that the Appellant was charged with possession with intent to distribute cocaine base. In order to find the Appellant guilty of possession with intent to distribute cocaine base the jury had to decide whether or not the Appellant did possess with intent to distribute a controlled

substance and whether that controlled substance was, in fact, cocaine base or a mixture containing cocaine base as charged in Count 2. (Jt.App. Vol.II at 463). It is clear that the nature of the controlled substances at issue was determined by the jury beyond a reasonable doubt.[FN7]

FN7. Even if the government had failed to prove that Appellant knew that the substance he possessed was cocaine or cocaine base, *Apprendi* would not be implicated. *See Garcia,* 252 F.3d at 844 (rejecting defendant's argument that the government must prove *mens rea* as to the type and quantity of the drugs, as statute only requires that the defendant "knowingly or intentionally ... possess with intent to manufacture, distribute or dispense, a controlled substance"); *accord United States v. Barbosa,* 271 F.3d 438, 458 (3d Cir.2001)(holding that "the structure of the drug statutes and the policies behind them show that the Government's *mens rea* burden has not changed with the advent of *Apprendi"* ).

### B. Quantity of Controlled Substances

While the government concedes that the district court erred in not permitting the jury to decide the quantity of cocaine and cocaine base, it contends that the error does not require a remand for resentencing because the error was not "plain" and did not affect substantial rights.

We have described the "plain error" review as follows:

First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under [Fed.R.Crim.P.] 52(b), or in other words, we must decide whether the plain error affecting substantial rights affected the fairness, integrity or public reputation of judicial proceedings.

*Stafford,* 258 F.3d at 470, *citing United States v. Thomas,* 11 F.3d 620, 630 (6th Cir.1993), *cert. denied,* 511 U.S. 1043, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994). It is clear that imposing additional years beyond that authorized by a jury's verdict affects a defendant's substantial rights. *See United States v. Page,* 232 F.3d 536, 544 (6th

Cir.2000); *United States v. Barajas-Nunez,* 91 F.3d 826, 833 (6th Cir.1996). Moreover, a sentencing error seriously affects the fairness, integrity or public reputation of judicial proceedings when a court's error results in imposition of a sentence which is not authorized by law. *Id.; United States v. Williamson,* 183 F.3d 458, 464 (5th Cir.1999).

Appellant was sentenced to 365 months on each count with the sentences to run concurrently. The Government argues that the Sentencing Guidelines would require that the sentence imposed on the substantive count run consecutive to the sentence on the conspiracy count, to the extent necessary to produce a combined sentence equal to the total punishment. *See Page,* 232 F.3d at 544-55; U.S.S.G. § 5G1.2(d); *see also* U.S.S.G. § 3D1.2 and 3D1.3. In *Page,* all four of the defendants were convicted of conspiracy to distribute crack cocaine and three of the four were convicted of additional counts of distribution of crack cocaine. The district court determined the quantity of drugs in violation of *Apprendi* and sentences exceeding the maximum of 20 years were imposed on all of the defendants. On appeal, only the sentence against the defendant Page, who was convicted of a single count of conspiracy, was found to be plain error in that his sentence was ten years more than the prescribed statutory maximum and thus his substantial rights were affected and the fairness of the proceedings was undermined. Plain error was not found with regard to the sentences imposed on the other defendants because each of the other three defendants were convicted of one or more counts of distribution of crack cocaine in addition to the conspiracy charge and, absent the sentencing error, their sentences would have been the same as those which were imposed. *Id.* at 545.[FN8] This case cannot be distinguished from *Page.* Appellant was not prejudiced by the error since, absent the error, his sentence would have been the same as that which was imposed.[FN9] Accordingly, as in *Page,* we decline to exercise our discretion as to Appellant's sentence because Appellant can show no meaningful benefit that he would receive from vacating his sentence and remanding for resentencing.

FN8. Indeed, the sentences of the defendants Linton (convicted of an additional six counts of distribution of crack cocaine), Hill (convicted of one additional count of distribution of crack cocaine) and Powers (convicted of two additional counts of distribution of crack cocaine), if ordered to run consecutively to the conspiracy conviction, would exceed the sentences imposed by the District Court which were as follows: Linton-360 months, Hill-360 months and Powers-262 months.

26

FN9. As in *Page,* Appellant's sentence after remand could remain the same. It is also possible that it could change, either in Appellant's favor or not. The fact that the sentence could change does not require vacation of the original sentence under our plain error review.

*United State v. Cooper, supra.*

Respondent contends that trial counsel's objection to drug quantity determinations made at sentencing for purposes of calculating petitioner's offense level under §2D1.1 of the United States Sentencing Guidelines[2] failed to preserve petitioner's *Apprendi* claim because, as noted above,

---

[2]  U.S.S.G. 2D1.1 provides in relevant part:

2D1.1. Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy

(a) Base Offense Level (Apply the greatest):

(1) 43, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense; or

(2) 38, if the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C), or 21 U.S.C. § 960(b)(1), (b)(2), or (b)(3), and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance; or

(3) The offense level specified in the Drug Quantity Table set forth in subsection (c), except that if (A) the defendant receives an adjustment under § 3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (I) level 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels.

***

(c) DRUG QUANTITY TABLE

27

defense counsel failed to object at trial to redaction of drug quantities from the jury charge.  *United States v. Cooper, supra.*

Unfortunately, appellate briefs are not a part of the record here, and the Court therefore is unable to determine whether or not appellate counsel on direct appeal properly referenced trial counsel's objection at sentencing to drug quantity determinations.  As discussed by the United States Court of Appeals in this case, "[w]here there has been no objection, review is for plain error."  *United States v. Page, supra*, 232 F.3d at 543.  However, petitioner was sentenced before *Apprendi.*  The United States Court of Appeals for the Sixth Circuit has held that, where a criminal defendant was sentenced prior to *Apprendi,* as were the circumstances in this case, his objection at sentencing may preserve the issue for appeal.

> [A] pre- *Apprendi* defendant's objection at the sentencing hearing to the quantity of drugs and the judge's determination by a preponderance of the evidence is sufficient to entitle the defendant to *de novo* review. *See Copeland,* 321 F.3d at 601; *Humphrey,* 287 F.3d at 445. In *Strayhorn,* the defendant preserved his challenge to his sentence by repeatedly objecting to the drug quantity determination at the plea hearing, at the sentencing hearing, and in written

---

Controlled Substances and Quantity Base
Offense
Level
(1) 30 KG or more of Heroin; Level 38
150 KG or more of Cocaine;
1.5 KG or more of Cocaine Base...

\*\*\*
150 KG or more of Cocaine;
1.5 KG or more of Cocaine Base...

\*\*\*

28

> objections to the calculation of his base offense level in his presentence report. *See Strayhorn,* 250 F.3d at 467. We determined that although Strayhorn did not "utter the words 'due process,' " he nonetheless preserved his challenge to the drug quantity determination. *Id.* Much like *Strayhorn,* Darwich adequately preserved his constitutional challenge to the quantity determination under *Apprendi.* Darwich consistently objected, both in writing and orally, to the PSR's computation of a specific drug amount. Darwich objected to the drug quantity at the evidentiary hearing, referencing the objections raised in his letter to the Probation Department after it assessed the quantity. Darwich also alerted the district court, at the plea hearing, that the amount of marijuana was in dispute.

*United States v. Darwitch*, 337 F.3d 645, 656 (6th Cir. 2003).

Here, defense counsel objected to drug quantity determinations in the PreSentence Investigation Report and at sentencing. *Sentencing Transcript*, at 3-5. The District Court, however, overruled petitioner's objections in relevant part as follows:

> [T]he probation officer attributed the defendant with 17 kilograms of powder cocaine and 1.5 kilograms of crack cocaine. These quantities are based on information provided to the government by Hector Caro during his debriefing in January of 1999. However, Mr. Caro also testified during the defendant's trial, and the Court has carefully examined the transcript of his testimony. The Court will base the defendant's drug quantity calculation on Hector Caro's trial testimony because it was given under oath and subject to extensive cross examination by counsel for the defendant.

> ... Hector Caro testified that he provided six kilograms of cocaine to the defendant in approximately July, 1996. (... [T]ranscript at Page 44). Caro further testified that he returned to the United States from the Dominican Republic in April of 1998. He began again to supply the defendant with cocaine. Specifically, Caro testified that in August of 1998, that he delivered five kilograms of cocaine to the defendant. ([Transcript] Pages 54 to 60).

> Moreover, Caro testified that in late September or early October of 1998, Caro supplied the defendant with 1.5 kilograms of crack

29

cocaine. (Transcript at Pages 70-73). Finally, Caro testified that he delivered his last shipment of cocaine to the defendant in mid-October of 1998. On that occasion, Caro delivered six kilograms of powder cocaine to the defendant. (The transcript shows this on Page 94).

... Caro did not waiver in his testimony regarding quantities of cocaine provided to the defendant. Moreover, Caro's testimony is corroborated by the testimony of Charles Glenn and other evidence that was presented at trial....

Caro always fronted the drugs to the defendant for which the defendant would make periodic cash payments. In addition, the quantities supplied to the defendant were large enough to support an inference of intent to distribute as they were too large for personal drug use.

***

[T]he defendant's objection is overruled. The defendant is attributed with 17 kilograms of powder cocaine and 1.5 kilograms of crack cocaine for the purposes of determining his offense level under the Guideline Section 2D1.1.

*Id.*, at 7-8 (citations omitted).

In any event, even under a *de novo* standard of review, petitioner's *Apprendi* claim lacks

merit. A violation of *Apprendi* is subject to a harmless error review. *See United States v. Zidell*, 323

F.3d 412, 433-34 (6th Cir. 2003), citing *United States v. Burns*, 298 F.3d 523, 531 (6th Cir. 2002);

*United States v. Stewart*, 306 F.3d 295 (6th Cir. 2002).

Under this standard, an error is deemed harmless only if "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."

*Id.*, citing *Neder v. United States,* 527 U.S. 1, 15 (1999); *Stewart, supra*, 306 F.3d at 323. While

the United States Court of Appeals for the Sixth Circuit dismissed petitioner's *Apprendi* claim under the plain error standard of review,

> the main difference as to substantial rights in the harmless- and plain-error analyses is that the burden of persuasion shifts from Government to defendant.

*United States v. Dominguez Benitez*, 542 U.S. 74, 82 n. 8 (2004). Still, for the reasons discussed by the United States Court of Appeals for the Sixth Circuit, any *Apprendi* error was harmless. This case appears analogous to *United States v. Lopez*, 309 F.3d 966, 970 (6th Cir. 2002), citing *United States v. Page, supra*, 232 F.3d at 544-45 ; Fed.R.Crim.P. 52(a), wherein the United States Court of Appeals for the Sixth Circuit concluded that the *Apprendi* error was harmless where re-sentencing would not assist the petitioner.

> In *United States v. Page,* 232 F.3d 536 (6th Cir.2000), the defendants were convicted not only of conspiracy but also of one or more counts of distribution and/or possession with intent to distribute, each of which carries a statutory maximum penalty of twenty years under § 841(b)(1)(C). The court stated that
>
> the total statutory maximum is dramatically increased depending on the number of counts of which each defendant was convicted. The government argues that there would be no change in defendants' sentences if remanded for resentencing. Rather than running the sentences concurrently, the Sentencing Guidelines would require that the sentence imposed on one or more of the substantive counts run consecutive to the sentence on the conspiracy count, to the extent necessary to produce a combined sentence equal to the total punishment.
>
> *Page,* 232 F.3d at 544; *see also* USSG § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."). Reviewing for plain error, the court found that the defendants "were not prejudiced and that the fairness of the proceedings was not affected by the error since, absent the error, their

31

> sentences would have been the same as those which were imposed."
> *Page,* 232 F.3d at 545.
>
> Like the defendants in *Page,* Lopez was convicted of one count of
> conspiracy as well as one count of distribution. If Lopez were
> resentenced properly in light of *Apprendi,* the sentences for each
> count, both of which carry a statutory maximum of twenty years,
> would run consecutively until reaching 360 months (240 months on
> the conspiracy count and 120 months on the distribution count),
> within the combined statutory maximum of forty years. Therefore,
> Lopez was not prejudiced by the *Apprendi* violation, and the error
> was harmless. *See* Fed.R.Crim.P. 52(a) ("Any error, defect,
> irregularity or variance which does not affect substantial rights shall
> be disregarded.").

*Id.*  Such are the circumstances here.  Further, the District Court found Hector to be a credible witness and, as noted, his testimony was regarding the drug quantities was corroborated in part by that of Charles Glenn.  *See United States v. Copeland,* 321 F.3d 582, 606 (6th Cir. 2003)(*Apprendi* error harmless where, construing largely uncontroverted evidence conservatively, there was overwhelming evidence as to amount of drugs at issue); *United States v. Dusenbery,* 78 Fed.Appx. 443 *450, unpublished, 2003 WL 22331990 (6th Cir. October 9, 2003)(*Apprendi* error harmless where overwhelming evidence of drug quantity); *United States v. Sifuentes,* 30 Fed.Appx. 555, unpublished, 2002 WL 3587777 (6th Cir. March 5, 2002)(Apprendi error harmless where "any reasonable jury would have made the same drug quantity determination.")

For all of the foregoing reasons, the Court concludes that petitioner has failed to establish the ineffective assistance of appellate counsel.

## VII.  CLAIM SIX

In claim six, petitioner asserts that he was denied a fair trial because the District Court responded improperly to a question from the jury during deliberations.  Specifically, petitioner

objects to the following exchange:

> COURT: The question: "Does the cocaine base found at the time of the search have to be the same cocaine in the charges in Count 2?
>
> The Answer: "You, the jury, must find beyond a reasonable doubt that the defendant, Ricky M. Cooper, knowingly and intentionally and unlawfully possessed with intent to distribute cocaine base, commonly referred to as crack, a Schedule II substance."
>
> [Defense counsel] MR. BROWN: Add "it is up to you to decide beyond a reasonable doubt."
>
> COURT: "And you must decide it unanimously."

*Transcript, Volume V,* at 982. Petitioner argues that use of the word "must," improperly commanded the jury that it was required to find petitioner guilty of possessing with the intent to sell cocaine base. *Addendum to Petition,* at 1.

Petitioner neither objected at trial, nor did he raise this claim on direct appeal. He therefore must show cause for failing earlier to raise the issue, as well as actual prejudice resulting from the error. *Napier v. United States*, 159 F.3d 956, 961 (6th Cir. 1998), citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Petitioner has failed to demonstrate cause or prejudice for his failure, as his argument is plainly without merit. Nothing in the District Court's instruction to the jury suggests that the jury was advised that they were required to find petitioner guilty.

## VIII.  CLAIMS SEVEN AND NINE

In claim seven, petitioner asserts that the District Court lacked jurisdiction to sentence him beyond the statutory maximum of twenty years, because the indictment charged him with conspiracy to distribute over 500 grams of cocaine in count one, and with possession with intent to distribute

over five grams of cocaine base, or crack, in count two. *See* Doc. No. 9.  Petitioner argues that he thereby was denied fair notice that he would be sentenced for dealing with more than 2 kilograms of cocaine or 20 grams of crack cocaine, or that the government intended to prove that he dealt with more than the foregoing amounts of drugs. *Memorandum in Support of Petition*, at 3.  In claim nine, petitioner asserts that the prosecutor improperly introduced at sentencing evidence regarding drug quantities that were neither specifically charged in the indictment, nor established beyond a reasonable doubt by the jury's verdict.

To the extent that the foregoing claims again raise a challenge under *Apprendi*, again, these issues already have been denied by the  United States Court of Appeals for the Sixth Circuit and will not now again be considered here.  *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999), citing *Oliver v .United States*, 90 F.3d 177, 180 (6th Cir. 1996) and *Davis v. United States*, 417 U.S. 333, 345 (1974); *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996).

Additionally, petitioner's allegation that he was denied fair notice of drug quantities because the indictment failed to specify the exact drug quantities alleged, should have been raised on direct appeal, but was not.  Petitioner therefore must show cause and prejudice for his failure to raise the claim on direct appeal before his claim may be considered in §2255 proceedings.  *Napier v. United States*, *supra*; *United States v. Frady, supra*.  He has failed to do so.  His claim that he was denied fair notice of the charges against him because the indictment failed to specify exact quantities of drugs is plainly without merit.

> [I]t has long been established ... that "the indictment is not invalidated because it cited the wrong statute," and that "a miscitation of a statute is not grounds for dismissing the indictment unless the defendant is misled thereby." *United States v. Garner*, 529 F.2d 962, 966 (6th Cir.1976). Rather, "the recitation of specific facts contained

34

> within the indictment, alone, is sufficient to adequately inform the
> defendant [ ] of the nature of the charges." 529 F.2d at 966. Such is
> the case here, where the recitation of drug quantities in the indictment
> amply apprised Defendant that he would be subject, if convicted, to
> the enhanced sentencing range of § 841(b)(1)(A). Defendant has not
> argued that he was misled by the indictment's failure to reference this
> penalty provision, and the Court cannot imagine how he could
> credibly claim otherwise.

*United States v. Kirksey*, 174 F.Supp.2d 611, 616 (E.D. Mich. 2001), citing *United States v. Brown*,

154 F.Supp.2d 1055 (E.D. Mich. 2001)(footnote omitted).

**IX**.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be

**DISMISSED.**

Petitioner's request for discovery, Doc. No. 116, is **DENIED**. Petitioner's motions to unseal

docket entries 15, 16, and 17, and to unseal jury questionnaires that were made a part of the record

during jury selection in his criminal trial, Doc. Nos. 117, 118, and his request for additional time to

respond after completion of discovery, Doc. No. 122, also are **DENIED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days

of the date of this report, file and serve on all parties written objections to those specific proposed

findings or recommendations to which objection is made, together with supporting authority for the

objection(s). A judge of this Court shall make a *de novo* determination of those portions of the

report or specified proposed findings or recommendations to which objection is made. Upon proper

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or

recommendations made herein, may receive further evidence or may recommit this matter to the

magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.


/s/ Terence P. Kemp
United States Magistrate Judge